## Case No. 1,133.

### BAYARD et al. v. MASSACHUSETTS FIRE & MARINE INS. CO.

[4 Mason, 256.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1826.

#### MARINE INSURANCE—WARRANTY OF AMERICAN PROPERTY.

Policy of insurance whereby the plaintiffs, for whom it may concern, insured "10,000 dollars, viz. 2326 dollars on the cargo, 1860 dollars on the freight, and 5814 dollars on the profits on board of the brig Dick, freight valued at 30,-000 dollars, and profits at 25,000 dollars, premium included, at and from her port or ports of loading in Europe to, at, and from any port or ports, place or places, the risk to continue for the term of 18 months, and to attach on merchandise or specie, both or either. Warranted American property. It is understood, that the assured are owners of the cargo, but the valuation of freight and profits hereby agreed to, shall be binding, whether the lading of the vessel is the property of the assured or of others, or whether, at the time of the loss, there shall be any cargo on board or not." The warranty extends to all the cargo put on board, on which the policy was to attach. Quaere, whether it does not apply to all the subjects insured.

At law. Assumpsit [by William Bayard and others against the Massachusetts Fire & Marine Insurance Company] on a policy of insurance, dated 2d of April, 1824, whereby Leroy, Bayard, & Co. were insured, for whom it may concern, "$10,000, viz. $2326 on the cargo, $1860 on the freight, $5814 on the

profits on board of the brig Dick, freight valued at $30,000, and profits at $25,000, premium included, at and from her port or ports of loading in Europe, to, at, and from any port or ports, place or places, the risk to continue for the term of eighteen months, and to attach on merchandise or specie, both or either. Warranted American property. It is understood, that the assured are owners of this cargo, but the valuation of freight and profits, hereby agreed to, shall be binding, whether the lading of the vessel is the property of the assured or of others; or whether, at the time of loss, there shall be any cargo on board or not. It is hereby agreed, that the captain or agent has leave to tranship the property hereby insured, in whole or in part, by any other American vessel or vessels, including vessels of war, British or American, upon which this policy shall attach, as if this insurance had been declared upon American vessel or vessels; and that this risk on any such transhipment to end on the arrival of the vessel or vessels in Europe or America." Premium 6 per cent. per annum, warranting 6 per cent. &c. &c.

The declaration in the first count stated, that the policy was made for the benefit and risk of one John O'Sullivan, late of New York, deceased, and that he was interested in the freight and profits to the amount insured, the goods being fully insured by prior policies; that the risk commenced at Cadiz on the 11th of September, 1824; that the vessel sailed from thence with goods on board on account of O'Sullivan, to Marseilles, and there took on board other goods, on account of O'Sullivan and other persons, and thence sailed on her voyage to South America; and then averred a total loss by shipwreck and perils of the seas, on the 11th of April, 1825. There were other counts, one stating the interest in the profits jointly, in the plaintiffs and O'Sullivan, and another the sole interest in the profits in the plaintiffs. There was also a count for money had and received. At the trial upon the general issue, the evidence was as follows.

A letter from the plaintiffs to William B. Swett & Co. dated March 24, 1824, inclosing the application for insurance, as follows:

"Gentlemen,—Will you be good enough to make inquiry at your offices, and let us know the result of the following application for insurance on freight and profits for the American brig Dick, Hudson, Master."

"Application.—Le Roy, Bayard, & Co. want insurance for twelve months, commencing from the period the Dick begins loading in Europe, to be extended six months longer if required, at the same rate of premium, at and from her port of loading in Europe, to any port or ports during said period, with liberty of touching and loading at, and to attach on merchandise or specie, both or either, taken in at, all or either ports, with a return for each entire month not used, for whom

---

[1] [Reported by William P. Mason, Esq.]

it may concern. The whole premium to be returned, should not the voyage go into effect. To give you an idea of this vessel, we state, that we have insured her at our offices for $20,000 for 18 months, at 9 per cent. to return a half for each entire month not used; $90,000 on her cargo for 12 months, at 6 per cent. to return a half, and, if required, for 6 months longer, at the same rate of premium. The Dick is coppered and copper fastened, just from the carpenter's hands, on which vessel nearly six thousand dollars has been expended in new sails, rigging, and on her hull; registers about 240 tons, destined from Cadiz and Gibraltar to South America, and will leave this for Europe in about two or three weeks, where her cargo will be waiting for her. We shall want from $15,000 to $20,000 covered on profits, valued at $25,000, and about $12,000 on freight, valued at $30,000, having done the rest here at the same rate as the cargo, which fills our offices, having insured here $130,000. We will thank you for as early a reply as possible."

Also a copy of the letter of William B. Swett & Co. in reply to the above, dated Boston, 27th March, 1824, as follows:

"Messrs. Le Roy, Bayard, & Co.—We proposed to several of our insurance offices the risk on your brig Dick (the premiums 5 per cent. per annum, and even less on similar voyages.) They inquire the age of the vessel, and object to the interest on profits and freight; if your offices will take the interest you propose here, property or vessel, or a proportion of freight and profits, and part property, could be done here at about 5 per cent., provided your description of the vessel is satisfactory. If it is a simple trading voyage on American account, the rate would be less, than if there was a prospect of having foreign or belligerent property, as constituting the cargo on which the freight is to be at the risk of the insurer. Premiums to Batavia and Europe two and a half per cent.; Canton and United States or Europe, 3."

Also a letter from the said Le Roy, Bayard, & Co. to the said William B. Swett & Co. dated New York, March 29, 1824, which was as follows:

"Your favor of the 27th we have received. With respect to insurance on the brig Dick, we can state, that she is a first rate vessel, built at Baltimore in 1819, rates A 2 at our offices. The property that will be shipped in her is for American account; the object, a trading voyage. She is coppered and copper fastened, and commanded by an experienced master, who has been long on the South American coast. We have insured at our offices here, on cargo, $90,000, and want $10,000 more covered; also, on freight, $17,000, and want $13,000 more; valued at $30,000; and on commissions, $20,000, valued at $25,000. If you can effect these insurances agreeable to our application, say 6 per cent. for a twelve month, to return a half per cent. for each uncommenced month, please

do it, with the privilege of extending it six months longer, if required, after that period, at the same rate of premium. What we want insured with you is as follows: $10,000 on cargo, $10,000; $13,000 on freight, valued at $30,000; $20,000 on profits, valued at $25,000. Your early reply will oblige your humble servants. Le Roy, Bayard, & Co.

"The reason, that we could not get a further amount done here, is, that all our offices are full on her."

Also a copy of a letter from the said William B. Swett & Co. to the plaintiffs, dated April 2, 1824, which was as follows:

"We have to day your valued favor of the 29th ult. and have effected the insurance on cargo, profits, and freight of the brig Dick. The large amount of freight and profits was considered as implying great risk in the expedition. We were therefore obliged to divide the amount among several offices, and give 6 per cent. per annum, with return as you presented."

Also a letter from the plaintiffs to the said William B. Swett & Co. dated New York, April 16, 1824, which was as follows:

"Gentlemen,—This will be handed you by our much respected friend, John O'Sullivan, Esq. the owner of the brig Dick, who visits Boston respecting the insurances we wrote you to effect for his account, which does not accord with the application we transmitted, nor the wording of the policies exactly meeting his ideas. He wishes some alterations made, which he will fully explain, and which, we trust, your offices will readily accede to, as they have all done here; the policies of which he takes with him to show you. He will also have to arrange for an excess amount of freight, which we did here during the interval that we wrote you for this insurance, which probably Mr. O'Sullivan may wish to have transferred to profits. After he has made his final arrangements, we will send you our notes for the premium, &c. We beg your kind attention and courtesies to our friend, which will greatly oblige your humble servants, Le Roy, Bayard, & Co."

The plaintiffs then called Tascar H. Swett as a witness, who testified, that he was one of the firm of William B. Swett & Co. who received the foregoing letters from Le Roy, Bayard, & Co. and who wrote the foregoing letters in reply; that he caused various policies of insurance to be underwritten at various insurance offices in Boston, as mentioned in the foregoing letter of April 2d, and among the rest a policy by the said Massachusetts Fire and Marine Insurance Company, which varied from the policy declared upon in this action, in the following respects: Instead of the words included between "assured, lost or not lost," and "whereof is master," the words were, "ten thousand dollars on the cargo, freight, and profits, on board the brig Dick, at and from her port or ports of loading in Europe, to, at, and

from any port or ports, for trade and refreshment. The risk to continue for the term of eighteen months, and to attach on merchandise or specie, both or either. Warranted American property. Freight valued at $30,000. Profits valued at $25,000. On cargo $2326; on freight $3022; on profits $4652= $10,000." And the said Tascar further testified, that he sent the original policies to the said Le Roy, Bayard, & Co. and they were brought back to Boston by the said John O'Sullivan; that he went with the said O'Sullivan to the various insurance offices, where the original policies were written, and among the others to the office of the defendants. The said Swett did not precisely recollect the conversation that took place between the said O'Sullivan and the president of the said Massachusetts Fire and Marine Insurance Company, but the purport of it was, that the said O'Sullivan, in consequence of having been a long time in South America, had acquired advantages there which would enable him to realize a great profit, if he met with no accident in the voyage, and on this account he wished to be insured so large an amount on freight and profits. The new policies were then made in the form specified in this declaration, and the old policies were given up to the different offices.

The plaintiffs then gave in evidence a certified copy from the custom-house, where the said vessel was registered, showing her to be the property of the said O'Sullivan.

The plaintiffs also produced two letters of credit from the plaintiffs to the said O'Sullivan, dated ——, authorizing him to draw on them, on his arrival in Europe, for forty thousand dollars in the whole; one of which letters authorized him to draw on them generally, and the other, which was for $15,000, authorized him to draw on them to that amount, in the event of his not succeeding in getting funds in Europe, and to interest them in the voyage to that amount accordingly.

The plaintiffs also gave in evidence various letters to them from the said O'Sullivan, one of them dated Gibraltar, 3d June, 1824, stating his arrival there in the brig Dick; another letter, dated June 21, 1824, at Cadiz, in which the said O'Sullivan alludes to a certain contract he had entered into, and that he had arranged it to his satisfaction, and that he should despatch the brig in the course of the next month, loading her with more than a hundred thousand dollars. In another, dated August 24, 1824, he refers to various bills he had drawn on the plaintiffs, and states, that the brig will not be ready to sail before the middle of the next month. In another letter of the same date, he refers to other bills, drawn by him on the plaintiffs. In another letter, dated Marseilles, 4th December, 1824, he refers to a former letter, sent by him to the plaintiffs, of the 20th November preceding, requesting the plaintiffs to arrange the insurance to commence from the time of loading at Cadiz, 6th September, 3 P. M. civil account, that it may run equally with the cargo, freight, and profits. This letter contained a postcript, dated 23d January at Marseilles, in which he states, that he shall sail on the 27th of that month, with a cargo well assorted, and exceeding $100,000. The defendants admitted, that the said plaintiffs paid bills drawn upon them by the said O'Sullivan at Cadiz, amounting to $42,314 18. An invoice was also produced by the plaintiffs of sundry goods shipped on board the said vessel at Cadiz, on account of said O'Sullivan, in which the estimated value was $62,948 47. This was dated Sept. 11, 1824.

Another invoice was also produced by the plaintiffs of all the goods on board the vessel at Marseilles, including those shipped at Cadiz. The whole was invoiced as the property of the said O'Sullivan, and the nominal value thereof, including all charges and premium of insurance, was $104,444 75. This was dated January 31, 1825.

A bill of lading of the same was produced, in which the goods were stated to be shipped for account and risk of the said John O'Sullivan, in which the freight was stated to be nothing, being owner's property, but valued, as insured, at thirty thousand dollars.

The plaintiffs also produced in evidence the deposition of Francisco X. Harmony, of Cadiz, the merchant who transacted the business of the said O'Sullivan at that place. In this deposition he testified, that the real value of the goods shipped at that place was $35,071 05, and that he prepared and gave to the said O'Sullivan an invoice thereof, together with a simulated invoice, in which the goods were estimated at $62,948 47, and that he supposed that the latter invoice was intended to sell by. Also the deposition of Frederick Rabaut of Marseilles, stating, that he was informed, that various goods were laden on board the brig at that place, for the account of a Spanish merchant named Calvet, who took passage on board the brig. He states also, that he did not think Mr. O'Sullivan made any advances on the goods, for he the said O'Sullivan endeavored to procure himself, and requested also the said Rabaut to procure for him, freight to complete the loading of the vessel, having employed at Cadiz the disposable funds which he had, and he appearing disappointed in respect to more considerable funds which he expected to find.

The plaintiffs also admitted, that the said O'Sullivan acknowledged, at the time the said brig met with the accident which was the cause of the loss, that part of the goods on board the brig belonged to certain Spanish passengers, who claimed them at that time, and most of those that were saved were accordingly given up to them.

The defendants admitted, that the said brig and cargo were lost by the perils of the sea,

without any fraud or negligence on the part of the master, or of the said O'Sullivan.

Webster & Hubbard, for the defendants, contended, that the plaintiffs were not entitled to recover, because the warranty of "American property," in the policy, had not been complied with. That warranty covers all the cargo, freight, and profits. The goods taken on board on Spanish account at Marseilles, was a breach of the warranty.

Nichols & Prescott, for the plaintiffs, contended, that the warranty applied to the goods insured, and not to the freight and profits. It was not warranted, that all the property on board should be American; but that the part of the cargo insured by the policy should be American.

STORY, Circuit Justice. My opinion, upon full consideration of this case, is, that upon the true construction of the policy, the property, on which the profits and freight were to accrue was warranted to be American property during the whole voyage. I think this would have been the true construction of the words of the original policy, for which the present was substituted. The prior correspondence might not be unimportant to ascertain the meaning of the parties, as to any words of doubtful interpretation used in the policy; and under this aspect of the case, that correspondence would show conclusively, that in the preliminary negotiations the insurance company contemplated a voyage exclusively on American and neutral account. But I found myself, upon the words of the policy, stripped of all aid from collateral sources. Let us examine the words. The insurance is "$10,000, viz. $2326 on the cargo, $1860 on the freight, and $5814 on the profits on board of the brig Dick, freight valued at $30,000, and profits at $25,000, premium included." Now stopping here, the construction must be, that the word "cargo" here means, not the property on board exclusively belonging to the ship-owner, but all the property constituting the ship's lading, all the property on which freight and profits were to accrue. The freight and profits were upon a valuation of them as growing out of the whole cargo, and not merely upon any small portion which might belong to the ship-owner. Then the policy proceeds, "at and from her port or ports of loading in Europe, to, at, and from any port or ports, place or places, the risk to continue for the term of eighteen months, and is to attach on merchandise or specie, both or either. Warranted American property." It is very probable, that this clause, so far as it speaks of merchandise and specie, was inserted to guard against a possible doubt, whether specie could be deemed "cargo," within the words of the policy. But it is unnecessary to place any stress upon this suggestion made at the bar.

Suppose, for the sake of argument, the words of warranty were to be deemed a part of the preceding sentence, instead of standing by itself (as it in fact does in the policy and after a period), in an independent sentence, what would be its true interpretation? "The risk is to continue for the term of eighteen months, and to attach on merchandise or specie, both or either." On what merchandise and specie? Certainly on the merchandise and specie, which were on board of the ship, and constituted her cargo, and out of which the freight and profits were to grow; for these were at the risk of the underwriters. The term "risk," as here used, necessarily refers to all the subjects insured, for the risk is to continue for eighteen months, and plainly the risk on the freight and profits was designated to be coextensive in duration with that on the cargo. Then, if the words, "warranted American property," are to be connected with merchandise and specie, as the next antecedents, the warranty is equivalent to a warranty that the cargo, or all the merchandise and specie on board are American property. If, therefore, the warranty were construed in this limited sense, there would be a plain breach of it, for the Spanish property on board constituted a part of the cargo, and the warranty covers the whole cargo. But, in fact, the warranty stands as an independent sentence. I do not say, that this would be decisive against any connected interpretation. Instruments, like the present, are to be construed, so as to give effect to all the words, and in such a manner as fulfils the obvious intention of the parties. But the circumstance of a separate period intervening, entitles the court to look to the subject matter, to which it is appropriated. If the words had occurred immediately after the words in the first clause, "premium included," the natural interpretation would have been, that the warranty applied to all the subjects of the insurance, cargo, freight, and profits. The principal insurance was on the freight and profits, and to suppose that the warranty was intended to apply only to such goods on board as belonged to the ship-owner, would be to suppose, that the underwriters were solicitous to guard against belligerent risks as to what might ultimately be of very little value, and to expose himself, at a very moderate premium, to all the belligerent risks on freight and profits. For upon this supposition, the ship is not warranted American, and the ship-owner's goods on board only are warranted American, and if the principal part or the whole of the cargo were belligerent, and either on freight or on half profits, the underwriters must run all the belligerent risks on both. A construction leading to such obvious results ought not to be adopted, unless it be the natural and fair import of the language. The words, "warranted American property," may well be applied to all the subjects insured, for all of them are, in

the common language of commercial life, "property." The premium leads to no conjecture, that belligerent risks were included; and perhaps it would not be improper to hold, that the warranty was, that freight, profits, and cargo are American property. It is sufficient, however, if the warranty extends only to the latter. And I cannot entertain a doubt, that the word, "property," here means the same thing as cargo in the preceding sentence. If the other parts of the policy are critically examined, they fortify this conclusion. The succeeding words are, "It is understood, that the assured are owners of this cargo; but the valuation of freight and profits, hereby agreed to, shall be binding, whether the lading of the vessel is the property of the assured or not, or whether at the time of the loss there shall be any cargo on board or not." Here the words cargo, lading, property, occur in the same sentence, and are applied to the same thing, as words equivalent and synonymous. It is the cargo, the lading, and the property, out of which the freight and profits are to arise. This cargo, lading, and property, are not such as may be on board belonging to the ship-owner only, but all on board, whether it belongs to him or to others. "It is understood that the assured are owners of this cargo," but it may belong to others. Whether the one or the other be the fact, it must be deemed, that the warranty of American property extends to it. We must otherwise hold, that in a voyage to South America, then in a belligerent state, the underwriters, knowing that other property than the ship-owner's might be on board, were content to take a warranty, which might be utterly nugatory as to the most material risks. The clause, as to the transhipment of the property in other vessels, leads to the same conclusion. But I forbear any further commentary. My judgment is, that the warranty has been broken, and that the plaintiffs are not entitled to recover.

There is another point of view, in which the cause may be considered, upon which, however, I do not dwell, because it has not been argued by counsel, but which appears to me equally decisive against the plaintiffs. I suggest it merely for consideration, if a superior tribunal should deem the other opinion erroneous. It is this. The assured in their correspondence, upon the faith of which the insurance was made, represented, that "the property, that will be shipped in her, is for American account; the object a trading voyage." If the warranty does not cover the whole cargo, as there is no pretence to say, that this representation was ever varied by the parties, the legal effect is, that pro tanto the representation remains in force, and it has been falsified by the event.

Verdict for the defendants.